United States v. Shelby. Mr. Laughlin representing Mr. Shelby, you go first. Thank you, your honor. May it please the court, I'm James Laughlin. I represent the appellant, Javon Shelby. For the Court of Commission, I'd like to reserve three minutes of my time for rebuttal, and I'll keep an eye on the time. Okay. Unless the court would like me to do otherwise, I plan to talk about the rehape defense and then turn to the Batson issue within our remaining time. Rehape required the government to reasonable doubt that Mr. Shelby knew at the time of the alleged gun possession that he had previously been convicted of a crime punishable by more than one year in prison. The government doesn't dispute that such knowledge requires understanding. If at the time of the possession, Mr., sorry, if at the time of the prior proceedings, Mr. Shelby did not understand that his crime was punished by more than one year, or if he didn't remember that later at the time of the required rehape knowledge. So I want to ask on this one, what, I've tried to look at what your expert wanted to say and what you wanted to argue below. Did you, I don't think you argued that Mr. Shelby didn't understand that he was in jail for more than a year. Am I correct? Well, your honor, factually he was never in jail for more than a year. In the two cases... Didn't he serve more than a year? Didn't he serve more than a year on the two-year sentence? No, in fact, the documents show that he got one credit of good time for each day in custody. In fact, page eight of the pre-sentence report reflects he served exactly a year in custody. So it was a situation where somebody... Okay, so let me ask a question differently then. You did not contend that he did, that he, he was Well, your honor, I think that there's two separate things. No, it's a yes or no question, really. I mean, I understand you contend that he didn't have higher level reasoning. My question is, were you prepared to put on evidence that he had no idea that he served a year in prison? I think that the proffered testimony about his ability to recall things, given the five years that transpired from that prison sentence, it, I think even somebody without mental disabilities might not remember if they served one year or 364 days. And so somebody with those deficiencies might not remember at that time he actually served. Well, no, I'm asking what your proffer was, not what, what some hypothetical person might have understood or not understood. So was your proffer that he didn't even remember at the time that he possessed the firearm that he'd previously served time in prison? No, your honor, I think that's where the, the government gets off on the wrong track. We're not trying, we never proffered opinions that would have run afoul of rule 704. What Mr. Shelby was trying to do was present evidence about his general mental facilities and how that affects his ability to understand and recall. So the jury would have that information as it judged the inferences the government wanted it to make. So no, there was never going to be on this record, the expert coming in and saying, I'm finding that he could not have recalled in 2018 when he was arrested with this gun purportedly that he didn't remember that. Well, he could have said that, right? He could have said, gee, when I got arrested in for the possession, at that point, I had completely forgotten that I had served a year in prison. And I'd completely forgotten that I was convicted of a felony. And you could then put an expert to say that's a reasonable testimony by him because his mental capacities were such that he completely forgotten. But all I see here is a proffer that somebody will say that he didn't have higher level mental reasoning capability. And I'm not sure what, how that goes to the rehife issue. Well, your honor, I think a very good, a case that kind of deals with this is the court's decision in United States versus ROM, R-H-A-M, it's cited in the reply brief. And that was a case where the government proffered a similar kind of foundation argument that the defendants has to testify to put some kind of issue, something at issue before a psychologist can testify. But that was a counterfeiting case where the defense wanted to present a psychologist that would say he has certain defects in his brain that affects the way he visualizes things, which was rebutting the government inference that anybody who sees these counterfeit bills are going to know they're counterfeit. And this court said that it was improper to exclude that testimony. And it also said that, rejected the government's argument that, you know, that testimony is improper until there's proper foundation from the defendant who first takes a stand and says, no, I didn't recognize this as a counterfeit bill. So I think we're in a very analogous situation here where, again, it's the government's burden to prove the rehife element. Their entire evidence on that element is prior conviction records that they are using to claim that Mr. Shelby was shown certain things and told certain things in these proceedings, one proceeding occurring five years earlier. So they put at issue his ability to understand what was going on and then later recall that information at the time. I just want to follow up on your question, Detroit. State again exactly what would the expert have said that's relevant to this critical rehife knowledge point? Certainly there's she would have she would have served the function that psychologists also often do in this situation is to explain testing and records to the lay people on the jury. So she would have explained the testing she did to judge his IQ, to judge his reading comprehension, and to also explain what the educational records show about his ability to understand, read, recall, and recall. Then it was proffered that she would express the opinion that from those records that although Mr. Shelby may have superficial conversations, it cannot be assumed that just because he says, yes, I understand that, that he actually understands that. So I think that that is all valuable information that the jury should have had when it was gauging the inferences the government asked it to make. So you're saying that he never served more than a year in custody on any of his prior convictions and so that even though he was presumably told during the prior proceedings that resulted in the convictions that his crimes were punishable by more than a year that he didn't that just didn't register with him. Is that what the expert would have helped establish? Just put a fine point on it, if you would. I think what she would have done is she would have laid the groundwork about his mental capacity to allow an argument to be made that the government didn't prove their inferences beyond a reasonable doubt. And let me give you an example that may illustrate how the government was trying to use these documents and how the expert's testimony would have been important. The government pointed to a minute order in the 2018 case, a typical state court minute order that's all in all caps and very dense, even hard for us attorneys to read. But on that minute order, there were the words F.E.L. And the jury, they got that in through the probation officer and the government argument of the jury that Mr. That meant felony and B, that felony means punishable by more than a year in prison, which is something that we all know as lawyers. But I don't think most people understand that. That's the difference. Wait a minute. I'm not sure I understand. S.E.L. Like F.E.L. The first three letters of F.E.L. The first three letters of F.E.L. OK. Yes. So and that was a page 543 of the of the access of record where the order is and the closing arguments at page 434 and 435. So the government is getting very putting a lot on these records to prove to prove its case on the rehaze element. And and they're trying to rely on those kind of inference. So I think it's perfectly not only reasonable, but valuable for the jury to understand what kind of person Mr. Shelby is. He is not even the average person who might go through criminal proceedings. He suffers from significant mental deficits that affect his ability to understand that kind of thing as it's going on. But certainly when he's shown these kind of documents after the fact, which the government thought was significant, that that he does not it does not register in the way that it might for another person. So that is the. Why why are we fussing with the distinction between no and understand? I mean, it seems to me that the evidence you're trying to put on really goes to whether he knows it. Correct, and I think that the reason we got into no versus understand is because the district court draw drew a distinction in a way that suggested that it thought that, for example, if if I were to say something to somebody who didn't speak Spanish and Spanish that, you know, you you know it, you may not understand if you know it. And so and so maybe it's a false distinction because of the language of the district court used in rejecting this this defense. But certainly it also has some parallels in the languages found in rehab itself, which which equated knowing and understanding. Counsel, can you help me out? Tell me where I can find in the record that he served exactly one year in prison. It's the the the PSR documents. It's it's it's a separately filed PSR and sentencing documents at page eight of that. Because I read it as saying he served in excess of a year in prison. I read it incorrectly. I can pull it up. I believe what it said is if you look at if you look at on that paragraph in the far the farthest left, it tells you the date that he was arrested, which I believe was April 11th. And then we then then you see that he's he's released from prison, even though he's discharged from probation later, he's put on probation exactly one year later. But then he serves an additional time in probation. That's why there's a later discharge from probation. OK, so let's assume just for purposes, I'll go back and look at this. Does he contend that he doesn't understand that he served a year in prison? Well, again, I think that that's the wrong question, the wrong question. But it's what I'm asking. It's he he hasn't he has not contended anything because it's not his. No, he didn't anything right. I understand. Does his expert what his expert contend that he lacked the capability? Let's assume it's an undisputed fact that he served a year in prison. Right. Well, you know, I don't think surely, surely you can assume that with me. You just told me it was true. So let's assume it's let me finish. Let me finish. Let's assume it's undisputed that he served a year in prison. Was any of the proffered testimony going to be that he lacked the capability of understanding that he served a year in prison? I think that the general information that the expert provided would make a question, make it at least arguable as a reasonable doubt argument that a person in his position with his qualities would would not remember whether it was three hundred sixty five days or three hundred sixty days. OK, now now let's let's dig down on that for a second. You weren't going to present evidence that he didn't understand that he was in prison for a period of time, correct? No. And again, the whole the whole basis for the defense was to raise reasonable doubt of the government's proof that it was presenting on the element it had to prove, which was related solely to the documents about what happened at those parts. I understand. I understand. My question is, wouldn't all of that evidence be irrelevant if if someone served twenty five years in prison, whether he understood the documents or not, that the defense would be pretty irrelevant because he would have understood that he got more than a year. Right. If somebody served a twenty five year sentence and yes, there's no question. I mean, I think if he served a sentence now and I want to get back to your factual issue, if he served a sentence of one year and a day, would your evidence have gone to his capability of understanding how long the sentence was? I think so, because I think that even somebody without deficits like that might not remember exactly. They remember they served about a year in prison, but when it becomes a legal issue about whether it was a year or a year and a day, that's not something that somebody the day they gets out of jail might necessarily remember five years later. So I think I think when you're that close, any ability to comprehend what's going on, remember what's going on is going to be a significant factor. I see that I'm way over my time. Yeah. Yeah. Well, you're you're you're into your rebuttal. Let's hear from the government and we'll give you a chance to respond. Thank you. Thank you, your honor. And may thank you, your honor. And may it please the court. John Henry Thompson for the United States. In this case, the defendant brought a loaded handgun into a shopping center parking lot just six weeks after pleading guilty to one felony. And six years after beginning a two year sentence for another felony against that backdrop, exclusion of this evidence was not an abuse of discretion. Dr. Budding's generalized investigation of Mr. Shelby's IQ classroom performance and adaptive skills is simply too attenuated from the disputed question in this case. Whether Mr. Shelby, who entered knowing and voluntary guilty pleas, was informed on the record of the maximum sentence that each conviction could carry and who reported to prison with only 82 days of custody credit in his back pocket on a two year sentence, could somehow lose track of these life altering moments from his personal history. I guess I don't I just don't understand the government's position in this case. It strikes me that the testimony is certainly relevant to the issue that you, you, the government had to prove. You we could certainly debate how powerful the evidence would be before a jury. But but the district court here excluded it solely on relevance grounds, as I understand it. And I just don't see how that could possibly be right. Your Honor, we are arguing this case on on relevance grounds, the gatekeeping role under Rule 702. And if I could get your hang on, hang on. And we agreed that Daubert. Can I just Daubert 702 that that is not before us, right? That would need to be analyzed on remand because the district court never reached that issue. Correct. It's it's not entirely clear to me which rule of evidence the district court may have had in mind. Mr. Shelby on reply and us in our brief have relied on the relevance prong of of Daubert review, as in whether this would assist the jury. But, Your Honor, even if we're talking about 401, I do want to make my case on that. And I think taken to its logical conclusion, Mr. Shelby's argument would be that after rehave evidence that a defendant scored a 2.0 GPA in his 10th grade year instead of a 3.5, because it would have a scintilla of relation to the concept of him understanding the abstract concept of punishability would be relevant and admissible. And I and I want to push back on that. And the reason is that Mr. Shelby wants to make this an abstract case about the ability to comprehend a legal concept. But in this case, Mr. Shelby has not and cannot dispute the validity of his state court pleas. The court found that those were knowing and understanding made explicitly after the court had specifically advised him of the maximum sentence. It's hard to overstate how important that is for a defendant who's considering whether to plead guilty before the sentence has been announced. And in one of the cases, the state court, in fact, sentenced him to two years in prison, which means in which he acknowledged in two separate line items of his agreement with his initials. But that means that Mr. Shelby can ask you a question about that two year sentence. I'm I'm still struggling with how long of that sentence he served in prison. Can you just the wreck? Does the record tell me that he only served a year? Your Honor, I I am not comfortable interpreting the language in that paragraph. Twenty six of the PSR. Well, that's a paragraph. Twenty six just simply doesn't say anything about it at all. It just says he was admitted in 2014 and paroled in. 2017, it doesn't say what day he left prison, right? Your Honor, I certainly do not want to push back against Mr. Shelby's concession today that it was exactly one year in prison, but but say it was a day under a year in prison. The only reason it would have been is because Mr. Shelby successfully utilized the incentive system known as good time credits. OK, so let me let me make let me make the other side's argument and see how you respond to it. You and I would have understood that from the amount of time we served and the good credits we got that we got sentenced to more than a year. But there's something about Mr. Shelby that would have prevented him from understanding that he was sentenced to more than a year, even though he served 365 days of that sentence. Why isn't that evidence something that can come in? And if it is something that can come in, why what was wrong with the proffer in this case? Your Honor, that evidence may be able to come in if we had that evidence before us, and the problem here is it is one of fit between the proffer and and the dispute. And the issue is that nothing in the defense proffer would indicate that Mr. Shelby either had the kind of idiosyncratic thought process that would lead him to believe that because he served a year instead of a year and a day, that his statement was wrong. That the Supreme Court had somehow gone back and expunged his record, nor does he cite anything from Dr. Budden's investigation that would suggest the kind of memory issues associated with losing track of these life altering events from his personal history. With all respect to the other side, the evidence in the record on memory is things like visual perception of patterns in a quiz or test environment or its evidence about school records. And Your Honor, this is not a case about Mr. Shelby's ability to comprehend an abstract concept or to find the main point in a reading passage or to secure a passing grade on a quiz. This is about whether someone who served either a year or just under a year in prison could remember later on that he was convicted of a felony. And nothing in the defense proffer points to any mental condition felony carrying a certain punishment. Let me ask you this. This is not the case in front of us, but I want to clarify what your reasoning is and isn't. Let's assume that we've got someone who we know has no has serious memory problems. He's got amnesia. He was sentenced to a felony that makes it illegal for him to carry up to possess a firearm. He possesses a firearm and his defense lawyer tries to introduce the fact that he is an amnesiac. Is that irrelevant evidence? I don't believe so, Your Honor. And we don't dispute. So that's good evidence. So the question is, what was what about this evidence makes it so irrelevant that it had to be kept out when apparently the evidence is going to say, you know, this guy really doesn't know his mental capacity is such that he didn't he he did not know that he was a felon such that he could no longer possess a weapon. Yes, Your Honor, I think in determining whether the exclusion is ultimately within the court's discretion, I think it's important to keep the record in mind. And I think we need to make it concrete on day one. And by day one, I either mean the day he was convicted of the burglary or the day he was convicted of the false impersonation. But let's stick with the burglary. The state court found on the record after informing him of the potential consequences of conviction, including the maximum sentence and including later firearm restrictions. The court gave him all this information. He then pleads guilty and then the court actually sentenced him to two years. So that's the backdrop. The evidence he wants to submit is generalized investigation of his ability to process information in a testing or classroom setting. And respectfully, I think those two kinds of evidence are simply too far apart. This isn't about his ability to turn around in his mind a legal concept. It's about whether someone who reports prison, knowing that he may spend two years there, can somehow lose track of that information. And there are two potential ways it could happen. As I see it, one is that the fact that he's been released potentially early leads him to kind of go back in time to the moment of the conviction and say, oh, well, the judge must not have meant that. And nothing suggesting that kind of idiosyncratic thought process is in the defense proper. The alternative is what your honor referenced a moment ago, which is the kind of amnesia defense, which is I may have known it then. But for whatever reason, I didn't know it on the day of my conviction. And again, Mr. Shelby has pointed to nothing in the proper, suggesting that he has the magnitude or type of memory issue that would draw that into question. So this court doesn't have to draw a hard line for every future case. But we submit that the exclusion of this evidence on relevance grounds falls within the realm of the reasonable and was not an abuse of discretion. I guess I don't I don't understand your your answer to Judge Fletcher's question suggests that you do recognize how expert testimony, at least of this ilk, could be relevant. It's just and so from a legal standpoint, it doesn't seem like we're really having that that difficult as a debate. Everything that you've told us this morning just strikes me as you're just not persuaded that the evidence was all that powerful. It didn't draw it doesn't draw a strong enough inference in Mr. Shelby's favor to warrant letting it in. And it just strikes me that that's that's for the jury to resolve. It's not for for judges to to keep that information away from a jury. So help me understand why I'm missing something there, I guess. Your honor, I guess I would I would put it this way. If you look at the cases Mr. Shelby has cited in which there's these relevant issues, he talks about ROM. The government put forth the government charged the defendant with knowingly passing counterfeit bills and to support its mens rea element of knowledge. The government pointed only to the fact that the bills looked like counterfeits. And the defense came in and said, actually, we have an expert willing to testify that this defendant has serious problems with his visual perception. Now, whether that evidence was strong or weak on the record of that case, it was directly linked to the it linked the act in the mens rea much better than than we have here. Here we have basically recall of personal history of something like reporting to jail to jail a day one, knowing that you could be there for two years. And the proffered evidence is this individual performed quite poorly in school. And and frankly, we don't think that those are related enough to get over the bar of relevance, or at least that that determination was within the court's discretion. How do I determine what the proffer was in this case? Was the report the proffer? Your Honor, it is a bit of a challenge because there was no report provided. However, there's one in the record here. There's one in the record that but that may be sentencing, Your Honor. But was something. So what this is an evidentiary argument. So what where do I find the proffer in this case? Your Honor, the best I can tell you is, yes, we do have some of the raw materials for her investigation. Mr. Shelby has not done a good job of pointing out what the relevant information is in that pile of school records. But if we're looking for the proffer, we have the psychologist one page letter at ER 667 and we have a series that we have an email from Defense Council putting her spit in on it. But it's hard to identify exactly what the proffer would have been. And frankly, the defendant hasn't helped us much on that score. So we kind of had to sift through the paperwork. But it's our position that nothing in that proffer is relevant to either of the potential ways that Mr. Shelby could have lost track of something as as momentous as reporting to prison to serve a two year. I ask the question because of the of the exchange you've had with Judge Watford and Judge Fletcher. There is some proffer would be quite relevant and it would be an abuse of discretion to keep it out. I have amnesia. I don't remember anything that happened in the past. And perhaps some proffer would be not particularly relevant. I'm not very smart. And so I'm trying to figure out where this falls on that scale. And in order to do so, I guess I've got to figure out what the proffer is, don't I? I think so, Your Honor. And again, I would point you to what the what the court had when it decided the motion, which is primarily a one page letter by Dr. Budding at 667, where she references these undisclosed deficits and problems with adaptive skills. And cherry picks a couple of lines from the school records. And it's pretty vague. It's very wide lens and generalized. And nothing in it or the underlying evidence suggests that what Mr. Shelby wanted to do was present anything like the kind of amnesia defense Your Honor just referenced. Other potential things could be some form of psychosis associated with reality breaks that could explain the mismatch between the day of the conviction and the day of the possession. But we don't have anything like that here. What we have is this individual is is low or below average scoring in his ability to process information in general or in these certain situations in the classroom or in the testing context. And that we think, again, on this record is too attenuated from the question in dispute. And just to go back to the fact that he was sentenced to two years and served what served a year in prison. If I go to the beach and I read a sign warning me about the dangers of a riptide, I might not be able to process, depending on my kind of abilities, exactly what that natural phenomenon might look like. But if I go in the water and I immediately experience that natural force acting on me, it's an entirely different perspective. And here, the warning is more concrete. It comes from a judge who, one breath later, is about to sentence you. And again, you actually experience the event. So what was abstract becomes quite real. And again, nothing in the defense proper indicates that Mr. Shelby would have on reporting to prison to serve out what could have been up to a two year sentence, could somehow forget about that in the intervening period. There's no evidence in this case suggesting, there's no witness testimony suggesting that Mr. Shelby had doubts about his conviction history. We simply have a one page letter from the psychologist. We have an email from defense counsel and we have a stack of school records and an IQ test. And we simply don't think that that kind of generalized investigation of cognition is relevant to the dispute. If the court has no more questions on this issue, I can I can move on to any other issues the court has. This is this is not relevant directly to the case. I'm wondering why you're arguing this case out of the DOJ and why we're not hearing from a U.S. attorney out of Los Angeles. Yes, Your Honor. I am a participant in the Bristow Fellowship Program at the office of the Solicitor General. And every year, some of the U.S. attorney's offices throughout the country give some of their cases to the Bristow Fellows to write an appellate brief and do an oral argument. OK. Any further questions from the bench for the government lawyer? OK, thank you very much. Thank you, Your Honor. Thank you. Let's put two minutes on the clock so you know, so you know what you're doing. Thank you. I'd like to respond to a couple of Judge Horvitz's questions about the record. With regard to the proffer, I would point the court to at first, ER 603, which is the letter of Dr. Budding dated April 24th. Is that letter different? Is that letter different than the letter 667? No, it's the same one. Submitted two different times. But that was before rehafe was decided. So that was presented in a more general sense. So rehafe was decided about two months before the trial in this case. So everybody was trying to respond to a new development. So on page 620, you have the first email notice of the of the defense from August 7th about using Dr. Budding as an expert at trial. And then that also includes her CV at pages 622 to 626. And then at page 662 and 665 is the actual opposition to the government's motion to exclude her testimony, which includes proffer information. And there's also an August 26th notice at page 861 and 862. And with regard to the question about the date of the arrest for the burglar, the time in custody for the That's the minute order in that case, reflecting that Mr. Mr. Shelby was in custody from April 11th, the day he was arrested, which matches up to the date on the left hand side of paragraph 26 in the presentence report. And then you'll see that he is he is he is released from custody and put on parole April 11th of the following year. Where do I that's where I was having trouble finding it. Where do I find the what the day he was released from custody and placed on parole? It's the it's hold on a second because it's not the PSR doesn't seem to say that it just says released from parole. It actually says at page it says. Or in the middle of paragraph 26, it says for 11 2014 colon parole. But that's the date he's released from prison. And then on July 21, 17, he's discharged from parole. OK, it says he was says he was paroled on that day. Correct. Correct. Released from prison. OK, so it doesn't say it doesn't say released, doesn't say released from prison, does it? That's my understanding of parole. Me. This means you're well, I could I mean, I guess my question is, could I obtain a parole on one day and be released on another? I've never seen this in the way it's reflected in pre-sentence reports. I've never seen the parole date. OK, I understand you have a release date, but I but that's my understanding. And so and I know that I'm a little bit. Can I ask you, can I just want to you're over your time already. And I'd like you to respond to the government's argument that there is a disconnect between the proffer and at least one portion of the argument you've made, which is that these memory problems that would, I guess, prevent Mr. Shelby from remembering that he had actually received a two year sentence. But that's just simply not a part of anything that was put before the district court in terms of what this expert would say. Maybe you can respond to that point. I think that I think that it's encompassed by the portion of the the the disclosure saying that he has attention problems and difficult difficulty retrieving information. I interpreted that as being a problem with memory that could be relevant to that situation. So I think that that's fairly within the scope of what the expert could provide. And if I I know that I'm way over if I can make one point, which is that. However, the government might be trying to prove the rehafe argument element now, in this case, they they did not call in any witnesses. They put all their eggs in one basket of prior conviction records and asked the court jury to draw some pretty iffy inferences from that. And so, Mr. Mr. Shelby had the right to present a defense challenging those inferences. And that right was based on his mental capacity. And I think she could give it a chance. Oh, I did have one more question. I'm sorry. This is what I've been I've been struggling with this. If you were admitted to jail on the 13th of April. Of one year and let out of jail on the 13th of April of the next year, wouldn't you have served more than a year? I don't think so. I mean, I guess it's it's it's. Well, if I were admitted to jail on January one and and then discharged at midnight on the 31st, I would have only served a year. Right. Yeah, I, I, I would say that it's normally when you count, you either don't count the first day or you don't count the last day. But if we're going to be if we're going to be absolutely precise about it's going to depend on the time of day you were admitted and the time of day you went out, you got out. Correct. And what's even more relevant is what the person's understanding of it is at the time and what they might remember five years later. OK. Any further questions from the bench? Thank both sides for your helpful arguments. United States versus Shelby is now submitted. Thank you, your honor. Thank you.
judges: W. Fletcher, Watford, Hurwitz